Good morning, your honors. May it please the court. My name is Kelly Reynolds. I represent the petitioners in this matter, Ms. Ingris Hernandez and her son, Romel. I would like to save three minutes for rebuttal. I'm aware that that's my responsibility. In 2012, when Ms. Hernandez was 15 years old, three gang members came to her house. Two stood outside, while one forced her inside, beat her, and raped her. About nine months later, Romel was born. Two years later, gang members came to Ms. Hernandez's house. They threatened to kill Ms. Hernandez and her son if she and her mother did not pay them money. Having suffered at the hands of the gang members before, Ms. Hernandez fled Honduras. Ms. Hernandez's fears about what would happen to her were not unfounded, as she had already been raped by one of Honduras's estimated 36,000 gang members. There are numerous issues in this case. I'm happy to address them. But the overarching, to me, the overarching issue in this case is how a woman from a country of such extreme gender inequality, that violence against her is almost inevitable, how that woman proves that the violence that she indeed suffered was on account of her being a woman. Now, we know that persecutors generally don't provide declarations explaining or describing their motives, but we also know that from this court's prior precedent, this court has recognized that rape is about control. It's not about sexual gratification. Here, the evidence shows that Honduras is a country with deeply rooted patriarchal attitudes and a pervasive machista culture. The UN Special Rapporteur on Violence in Honduras remained marginalized, discriminated against, and at a high risk of being subject to violence. And the board here, the BIA, found no clear error in the immigration judge's finding that Ms. Hernandez's rape was just a random act of violence. That language has been used by this court before, but not in a case, to my knowledge, not in a case where the petitioner is alleging gender, I'm sorry, persecution on account of her gender. Well what exactly is wrong in the finding? Do you claim that every, even a rape that's committed as a random act of violence against a stranger is a crime of opportunity? Do you say that that would qualify as meeting the threshold? I'm saying under the country conditions in this case, that that's not random. Now, the evidence in this case showed that gang members actually threaten and abduct and assault and rape women regularly. I believe that was found in the evidence. And so there's a difference between a random act of violence and the efforts to control women that are very evident in this case in Honduras given the country conditions. The country conditions evidence show that women are sought to be controlled in Honduras. And so I think that your question about whether or not there's a random act, whether or not rape is persecution based on gender, if it's random, it's not random in this case, if the court understands what I'm saying. If it's random, obviously the Nyserget precedent or Nyserget prior cases do say that, you know, if it's random, it's not persecution on account of one of the protected grounds. Here, I'm saying it's not random because it is on account of one of the protected grounds. Ms. Relms, may I ask a question of you? In order to qualify as a refugee, the applicant has to be, has to present evidence that she is persecuted because of her race, political, religion, or as a member of a particular social group. I take it your position is she is a member of a particular social group. Is that correct? That's correct, your honor. What social group is that? Keeping in mind that we have to use the Acosta definitions of a social group, which include immutable characteristics. She is immutable characteristic that she's a woman, but then social distinction and also particularity. I take it from your argument so far, maybe I've misinterpreted it, but your argument so far is that all women in Honduras are a particular social group. Is that correct? Yes, that's correct, your honor. And I think that, I'm sorry. Is there a case that you can cite me that holds that such a group, which involves millions of people in a group? Perdomo, 9th Circuit. The 9th Circuit held in Perdomo that Guatemalan women can be a particular social group. They remanded it based on, for additional findings based on, I believe, case law that had come out. Of course, we're in immigration, so case law just comes out between briefing and oral argument or between the filing of the petition and oral argument or the BA brief. Sorry, the BA decision. So they remanded it, but Perdomo held that Guatemalan women could be a particular social group. Remanded the Board of Immigration Appeal to make a determination whether Guatemalan women were a particular social group. That's not precisely the question I asked. My question is, do you have any case of any place in the world where the immigration law of the that women are a particular social group? Not a, sorry, not a published case because they tend to get remanded on the facts, Your Honor, but Perdomo was very clear in that this, so long as the country conditions can establish it, it's not, I think the problem that most courts have had with finding that women are a particular social group is particularity. And in this case, I would note that the Board of Immigration Appeals assumed that it met all the requirements of a particular social group. The Board of Immigration Appeals made no finding. Now, the immigration judge made a finding that it didn't meet the particularity requirement, and that's because it's too big, but this court has held before that it doesn't size, and I believe that was a finding in Perdomo as well. It's not about the size of the group. It's about whether or not there are boundaries of the group, whether or not you can tell the difference between this group and the other people in society. What's the role of the adjective Honduran women? Because you didn't say women in general, but Honduran women. Does that mean of women who happen to be in Honduras, or does it mean of Honduran? It wouldn't apply to time or other groups of foreigners. Well, every country has different country conditions. So, for example... What you're claiming is the boundaries of the group. That's my... Honduran... Oh, I see what you're saying. I'm sorry, Your Honor. Honduran women, women in Honduras. So, because the country... It's present in Honduras. It's not that their nationality is necessarily Honduran. That's what I'm trying to get at. Correct, Your Honor. Women in Honduras, because the country conditions show that women are treated differently in Honduras. I wouldn't say that somebody who relocates to Honduras... A woman who relocates to Honduras is not part of that social group. Is your position that all women in Honduras are part of a particular social group, regardless of their social and economic status? Yes, Your Honor. But I would also note that this is a finding that the board didn't... The board assumed that Honduran women was a viable, cognizable social group. The board didn't reach this issue. The board jumped to nexus and said, assuming Honduran women is a particular social group, then the respondent did not demonstrate that she was persecuted on account of her membership in that group. So, while I would love to have a very long discussion as to the viability or cognizability of women in Honduras being a particular social group, the board didn't reach that issue. So, I think that we need to look at... And that's why I'm jumping... I jumped over it as well in the beginning of this conversation that I'm having, or the beginning of this argument that I'm presenting, is that the board denied this on nexus. Is there any evidence that the later extortion attempt was based on... Was gender-based violence? I don't think so, Your Honor. I do think that obviously that caused... Well, I mean, it does show... There is evidence in the record that gang members threatened to abduct and assault women, and it is relevant that there was no... That the respondent lived alone with her two-year-old son and her mother at the time. So, that is relevant, but it's not necessarily... I wouldn't say that she's able to provide direct evidence. Again, we're looking at the country conditions. Of course, she didn't get a statement as to... From her persecutors as to whether or not... What was the basis for their persecution? Can you address the separate claims of the son? Well, the son is seeking... Now, of course, the son seeks... Filed an asylum application on the chance... Because he does have... He wasn't obviously present for the rape. So, the beginning of the persecution suffered by Ms. Hernandez was... It's not a purely derivative application. He has... He claims membership in distinct social groups that are not... He does. That's a freestanding application. It is... Not just piggyback. Yes, Your Honor. And he is seeking asylum based upon his membership in the social group of the family of Ms. Hernandez because she's being... Obviously, she was targeted on account of being a woman and then she's being... Obviously, the demands were being made of her and he is her son. And he was threatened if these don't meet these demands. So, he's seeking asylum on account of being her son and member of her family. I note that there is only 2 minutes and 45 seconds left. I do have one further question and that is, does he also assert a derivative claim? So, even if his independent claims were to fail, does he piggyback on hers as well? Yes, yes. He is derivative of her application as well. Asserted both? Yes, yes. All right. Do you want to reserve the rest of your time? That would be great. Thank you, Your Honor. Okay. All right. And then we will hear from... Is it Mr. Rabin or Rabin? Rabin, Your Honor. Rabin. Okay. May it please the court. Good morning. Arthur Rabin on behalf of the Attorney General. Now, before I start, I just wanted to quickly correct one thing. The board's decision, and I'm talking about page 04 of the Administrative Record, in the second complete paragraph, makes clear that they did hold that not just nexus, but it was that petitioner failed to meet her burden of proof in regard to her particular social groups. They said, however, she does not highlight the record of evidence persuasively demonstrating that Honduran society recognizes either of her first two groups as socially distinct. And only as to her group of Honduran women, or as been described today, women from Honduras, that one was the only one that was denied on nexus grounds. But as I read it, they did not reach the question of whether or not the group of Honduran women was a cognizable social group. They skipped over that question, assumed it, and then went to nexus. Am I reading that right? You are correct, Your Honor. Okay. Yeah. So, just wanted to make that quickly clear. So, with the court's permission, quickly on the jurisdictional issue. So, in this particular case, petitioner for the first time on appeal raised a Pereira issue, meaning that she challenged, based on Supreme Court precedent, whether or not the immigration court at all had jurisdiction over these proceedings, based on her claim that she was given a deficient notice to appear. The charging document did not contain the time and date, and so she claims that that particular notice to appear was deficient under Pereira. As we pointed out in our brief, that under this court's precedent, which has been applied numerous times, including twice a couple of days ago, the court has held that as long as they get... Can I interrupt you for a second? Yes, Your Honor. Your friend did not argue this point. So, why... Okay. This is in the briefs, and this is what she starts out with. So, I just want to quickly note that, Your Honor. So, I will move on to the asylum withholding and the torture convention claims. Now, in this particular case, the board found, and we believe there's substantial evidence to support their grounds, that petitioner did not show that record evidence persuasively demonstrates that Honduran society recognized either of these groups. Honduran women lacking effective familial protection, Hondurans with knowledge of criminal activity perpetrated by gang members, and children fathered by gang members as a result of rape whose birth is evidence of the criminal activity. Again, very quickly, as to the issue of whether or not she actually raised Honduran women lacking effective familial protection before this court, we believe that issue was waived because in her briefing, petitioner decided that that particular social group should be renamed to Honduran women lacking a male protector, instead of what the board actually examined, which was Honduran women lacking effective familial protection. So, she actually changed the very key terms of that proposed particular social group, and because the board never looked at the new particular social group of Honduran women lacking a male protector, thus making them more vulnerable, the board never had a chance to rule on that issue, and thus the court lacks jurisdiction over non-exhaustive claims. Now, petitioner also did not provide any evidence that Honduran society generally perceives that is based on either country reports, maybe even an expert witness, a trial, or some kind of jurisdiscriminatory law, that the record shows compellingly, compellingly, the record shows that the particular social groups actually recognized by that society, Honduran society, not just the persecutors, but Honduran society as particular social groups. Now, counsel has made note that the record contains a note about Miquisto culture in Honduras. Well, that note is contained in a very limited amount in the record, that is, it is a single sentence that is just making a general observation in a UN report, and it is not actually discussed or examined in detail as to how pervasive it is, what it affect, what the effect of it is, or what the Miquisto culture actually had to do with this case. So, to say that particular social groups are recognized, there is no evidence of that. Now, can we shift to the nexus point, because that's kind of the social group won't dispose of the whole petition because the board skipped over the Honduran women and relied on nexus. What's your response to her argument that, at least certainly with respect to asylum, the rape of a woman in Honduras, it's necessarily a reason for that, that she's a Honduran woman. Well, your honor, I mean, a man can be raped as well. Just because the act of persecution occurred does not necessarily mean that she was persecuted based on that rape. Meaning that there is no evidence she was singled out based on just the mere fact that she was a Honduran woman. Whether it could have been a child, it could have been a young man, it could have also been singled out. Thus, these gang members, as far as the record shows, I mean, we're just going strictly by the record. They made no statement as to why they chose this victim, why she was randomly selected on that particular time. Because at this point, there's nothing in the record to show that. So all we know is that in 2012, while her mother was absent and her father was absent for about an hour, her mother was absent, her father was traveling. The gang showed up at her door and one of them came in and raped her. And then he said, please do not tell anyone about this. That's it. That's all the facts we have. So to extrapolate from those limited facts to make this generalized, conceptive claim that, well, this is something that all Honduran women experience or are subject to as part of discrimination or persecution, it's just not there. So it's a bridge too far. And also, if we look at the actual evidence in this case, is the evidence really so compelling to overturn the board's decision on Nexus in this case? No, it's not. Because we know that gang members, based on background evidence, victimized many members of the society, not just sexually, but also criminally, extortion, other things, drugs. So we believe that the record, what it shows is there's general gang violence that occurs that victimizes hundreds of thousands of people in the society. And there is no proof. Two years later, the gang members who showed up to ask for extortion never mentioned the rape. They never said anything about it. So she, Mary, said, well, I felt like one of them may have been the rapist. But she had no proof of that because at both times the gang members wore masks. So she recognized them as gang members by their tattoos, but she didn't really recognize their actual identities. And then when they asked specifically on Nexus, asked in regard to the why do you think they came to your door? And she said, quote, we owned a business in which we sold clothes and they thought we had money and they threatened us. So she was then asked, and that's on page 140. On page 169, she was asked to clarify. You were asked for money because they knew you had a business? And she said, yes. So it had nothing to do, her gender, it had nothing to do with her membership in any specific groups. It had everything to do with the fact that the gang members saw them as a source of funding. And out of a sheerly criminal motive, they targeted them. And then when they failed to comply, the gang members made death threats, as they usually do in these kinds of cases. So to say that the evidence in this case shows compelling, or the standard review here is the evidence is so compelling that a reasonable fact finder would have to find what the petitioner is saying. We say it's not there because the actual evidence here shows that the linkages between these acts and the actual, the persecution and their actual motives is strictly criminal, based on a reason standard or on account of standard or whether it's assignment or not, or withholding. So as far as... Can you address the claims, the separate claims of the son? Before you do that, can you, when I ask you the same question, does he also have a derivative petition piggybacking on the mothers? It was not specifically discussed in this case, but yes, he does by law, because he was a minor at the time they entered and they entered together. She would, she can, if she receives asylum, he can derivatively get an asylum claim or grant. Yes, Your Honor. So in this particular case, the son claimed that he was, well, the particular social group of the son were two, one of which was children fathered by gang members as a result of rape, whose birth is evidence of the criminal activity, of which the board found there's no social distinction of because there was no evidence whatsoever in this record to show that community society recognizes children fathered by gang members as a result of rape as somehow a separate group, in a discrete group in society. And then number two, he said, well, I'm also, I've also have a claim of future persecution based on, because I'm a member of the Lee petitioner's family, the Garcia family, I'm sorry, the Hernandez family, that I will be victimized in the future. However, as far as the nexus goes, there is no evidence, as I said before, that they came to their door, that they victimized in the past, based on this, that this was some kind of a, they had an animus against this family. There was no evidence whatsoever that this was like, say the Romanoff family or the Noriega family in Panama or the Marcos family in the Philippines, that this was such a renowned family that they had an animus against them or that there was any kind of circumstantial evidence that they targeted them solely because of family. Instead, all the evidence shows that they were just targets of opportunity, that they found out they had a business, they found out they had money, they made a demand. Now, Romell claims that, well, I was specifically targeted because they saw me standing next to my mother and they said, uh-huh, we're going to kill your son if you don't give us the money. Well, there are plenty of board cases that show that just because, a matter of LEA, the first one, that shows that just because he was used as, or targeted as leverage, that is, they saw him, and she testified to that, she said they knew that's her vulnerability. On page 166, they saw that my son would have been our weakness and that because of that, they knew we would give up the money to protect him. So, it was just strictly, that threat was made as a means to achieve their goal, which is to rob this family, extort this family. It was not to target him specifically as a member of the Hernandez family. Moreover, his claim is also undercut by the fact that her sister and her mom, who also had death threats made against them, simply moved to another town an hour and a half away, and they have remained for at least two years before the hearing here completely unharmed. No incidents whatsoever. In fact, they had no run-in with gangs. So, the fact that these similarly situated family members reside an hour and a half away with no well-founded fear. Moving on to Kat, your honors, just very briefly. Did the BIA rely on that point about the relocation of the mother and the sister? Yes, your honor. They specifically said in their, I'm trying to find it here, on page 05, it says in paragraph, complete paragraph number two. It starts with furthermore. The very last, second to the last sentence says, in addition, his fear of harm on this basis is not objectively reasonable, as the respondent's mother and sister, who were threatened, have remained in Honduras without further incident over the last few years. So, they did rely. Yes, your honor. So, just, you know, again, the board found it was not objectively reasonable. And under Kat, there was no evidence that this acquiesced to their torture, because the family never made a police report. They never notified any official, including a doctor, that the rape occurred or that the extortion was going on. So, to say that a government official would have acquiesced, that is not there. They also never pointed to any evidence of futility, saying that, well, the police don't help anybody, so we didn't go to them because of that. Well, there's no evidence in the record to support such a claim. And then finally, the similarly situated relatives evidence also undercuts the torture claim, because this court has held previously that the evidence that similarly situated relatives who have not experienced torture undercuts any clear probability of torture in the future. So, with that, subject to the court's questions, I'd just like to quickly sum up. Okay. While petitioner, the evidence shows that the lead petitioner in this case was tragically the victim of a very horrible crime. That crime does not serve as a basis for relief and protection in this case. And neither does extortion motivated solely by a criminal motive. Given that petitioner has not, per her burden, shown nothing compelling in the record to show the court should reverse the agency's decision, the court should deny this petition for a review. Thank you. Thank you. We'll hear rebuttal now from Ms. Ramos. Thank you, your honors. Just to address a couple of things that my colleague raised. In terms of the change in language of the particular social group, I would just say that the immigration judge did review the original Honduran women lacking effective familial protection. The proposed it should be changed to Honduran women lacking a male protector because on page 76 of the oral decisions, she said that it's not immutable because they can become no longer vulnerable if an older brother, a husband, a male neighbor becomes part of their household. I think she was referring to the household. So, I would just say that that issue was addressed below. And then in terms of just the record in general, which was raised by my colleague, the issue here is not that there weren't other motives. There were other motives as to, I mean, there are gang members in Honduras committing crimes everywhere. But when it comes to petitioner, just because something is a crime doesn't make it not persecution. And when it came to petitioner, she is a, she was a Honduran woman and she was vulnerable. The record is very clear that Honduran women are, will almost inevitably become a victim of gender-based violence. And with that, I would be happy to answer any additional questions. I don't think we have any further questions. Okay. Okay. Thank you very much, your honors. All right. Thank you, counsel. The case just argued will be submitted. Thank you, your honor.
judges: Bea, Thapar, Collins